# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ORENCIO ALMAZO BARRAGAN,

      Petitioner,

v.                                                                                                                   No. 1:26-cv-0067 JB/DLM

TODD M LYONS, et al.,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Orencio Almazo Barragan's Amended Petition and Complaint for Declaratory, Injunctive, and Habeas Relief, filed under 28 U.S.C. § 2241. (Doc. 2.) Barragan challenges the legality of his mandatory detention without bond under the Immigration and Nationality Act (INA) and asserts that his continued confinement violates his procedural due-process rights under the Fifth Amendment. He also requests that the Court stay his removal from the United States while he pursues relief related to a pending U-visa certification request. Having reviewed the record and relevant law, the undersigned recommends that the Petition be **GRANTED IN PART** to the extent Petitioner seeks an individualized bond hearing under § 1226 and **DENIED IN PART** to the extent he seeks a stay of removal.[1]

## I.     Factual and Procedural Background

Petitioner is a 55-year-old native and citizen of Mexico. (Doc. 2 ¶ 3.) He entered the United States without inspection in or around May 2008 at the U.S.–Mexico border and has lived continuously in the United States since his entry. (*Id.* ¶¶ 21–22.) Petitioner has no criminal history.

---

[1] On January 15, 2026, United States District Judge James O. Browning entered an Order of Reference referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 10.)

(*Id.* ¶ 4; *see also* 18-1 at 3.) For the past 16 years, he has worked steadily with the same employer. (Doc. 2 ¶ 24 & at 19.)

On November 20, 2025, Immigration and Customs Enforcement (ICE) agents encountered Petitioner on a public street in Staten Island, New York during a targeted enforcement operation in which Petitioner was not the target but was detained as collateral. (*Id.* ¶¶ 1–2; *see also* 18 at 1–2; 18-1 at 2.) During a conversation with the agents, Petitioner stated that he was born in Mexico, had entered the United States without inspection, and lacked lawful immigration status. (*See* Doc. 18-1 at 2.) After developing probable cause, the Department of Homeland Security (DHS) issued a warrant of arrest, and the agents took Petitioner into custody. (*See id.*; 18-2.) DHS served Petitioner with a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled." (Doc. 18-3 at 1.) Petitioner was subsequently transported to the Otero County Processing Center (OCPC) in Chaparral, New Mexico. (*See* Doc. 18 at 2.)

While in DHS custody, Petitioner has been held in medical quarantine at OCPC due to a measles outbreak. (*See* Doc. 20 at 2.) He asserts ICE did not produce him for an immigration hearing scheduled for February 3, 2026. (*See id.*) To date, Petitioner has not been offered a bond hearing. (*See* Doc. 2 ¶ 10.)

Petitioner recently applied to the New York City Police Department (NYPD) for a U-visa law-enforcement certification based on his cooperation in the investigation of a 2016 assault and robbery during which he suffered physical injuries. (*See* Doc. 2 ¶¶ 5–6). He submitted his U-visa certification request on December 18, 2025, while he was detained. (*See id.* at 6–9.) Petitioner asserts that he must remain in the United States to pursue U-visa relief. (*Id.* ¶ 25.)

On January 14, 2026, Petitioner filed his Amended Petition and Complaint for Declaratory, Injunctive, and Habeas Relief under 28 U.S.C. § 2241. (Doc. 2.) In that filing, Petitioner seeks two forms of relief: (1) a stay of removal pending adjudication of his U-visa certification request, and (2) immediate release from immigration custody on the ground that his continued detention is unlawful. (*Id.* at 4–5.)

Respondents filed their response in opposition to the Amended Habeas Petition on February 10, 2026. (Doc. 18.) Two days later, Petitioner replied and clarified that the relief he seeks is an individualized custody determination under § 1226(a), which he contends requires a bond hearing before an Immigration Judge (IJ). (*See* Doc. 20.) The matter is now fully briefed and ready for disposition.

## II.     Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

**III.   Discussion**

Petitioner challenges the legality of his detention on two related grounds. He first asserts that DHS is subjecting him to mandatory detention without bond under its July 2025 interpretation of 8 U.S.C. § 1225(b)(2), despite his lack of criminal history and his continuous residence in the United States since 2008. (*See* Doc. 2 ¶¶ 3–4, 11.) Petitioner further alleges that neither ICE nor the Executive Office for Immigration Review (EOIR) has afforded him any opportunity to seek release on bond or to receive an individualized custody determination. (*Id.* ¶ 10; *see also* Doc. 20 at 1.) He also emphasizes his ongoing cooperation with law enforcement and his pending efforts to obtain a U-visa certification, which he contends require his continued presence in the United States. (*See* Doc. 2 ¶¶ 5–7, 25.)

For the reasons below, the undersigned concludes that § 1226(a), not § 1225(b)(2), governs Petitioner's custody, and that his continued detention without an individualized bond hearing raises a substantial due-process concern. The undersigned also addresses Petitioner's separate request for a stay of removal in light of his pending U-visa efforts.

**A.   Detention Under § 1225 vs. § 1226**

The detention of noncitizens prior to a final order of removal is governed by 8 U.S.C. §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). The statutory question here is whether Petitioner—who entered the United States in 2008 and lived openly in the interior since entry—is properly detained under § 1225(b)(2), a provision that applies only to noncitizens "seeking admission," or under § 1226(a), which governs the detention of noncitizens already

present in the United States and which provides for the possibility of a bond hearing. *See id.* at 297, 303. The undersigned concludes that, under the statutory framework and as interpreted by courts in this District, Petitioner's detention is governed by § 1226, not § 1225.

Several courts in this district have recently considered the interaction between §§ 1225 and 1226 in cases involving noncitizens who entered unlawfully years before their later encounters with immigration authorities. Respondents rely heavily on *Singh v. Noem*, asserting that it presents materially similar circumstances.[2] (*See* Doc. 18 at 3.) Because *Singh* is the government's principal authority and Respondents incorporate it by reference, the Court addresses it directly.

In *Singh v. Noem*, United States District Judge James O. Browning addressed the statutory basis for the federal government's detention of Singh, a noncitizen who entered the United States unlawfully in September 2023 and was re-detained in September 2025 while traveling through a United States Border Patrol checkpoint in New Mexico. *Singh v. Noem*, No. 2:25-cv-1110 JB/KK, 2026 WL 146005, at *35 (D.N.M. Jan. 20, 2026). The court explained that Singh was never lawfully admitted or paroled into the United States, and therefore he is deemed an "applicant for admission." *Id.* at *14, *35 (citing 8 U.S.C. § 1225(a)(1)). Despite arguments that Singh's subsequent detention must fall under § 1226(a), entitling him to a bond hearing, the court concluded that Singh's detention was governed by § 1225(b)(2), which mandates detention and does not require a bond hearing. *See id.* at *33.

The court began by analyzing whether § 1225(b)(1), the expedited removal provision, applies to Singh. *Id.* at *35. Although Singh had been present in the United States for less than two years at the time of his re-detention and had not been admitted or paroled, the court found that

---

[2] Respondents expressly "rely upon, and incorporate by reference, the legal arguments presented in *Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005 (D.N.M. Jan. 20, 2026)," including the government's response brief in that case, which they attach as Exhibit F. (Doc. 18 at 3 & n.1.)

§ 1225(b)(1) did not apply because immigration officers charged him under § 1182(a)(6)(A)(i), rather than the specific inadmissibility grounds, §§ 1182(a)(6)(C) or (a)(7), required for expedited removal. *Id.* The court noted that DHS's choice of inadmissibility ground appeared intentional and that, regardless of Singh's factual eligibility, the statutory prerequisites for § 1225(b)(1) were not satisfied. *Id.*

Having determined that § 1225(b)(1) did not apply, the court turned to § 1225(b)(2), which functions as a catchall provision for applicants for admission not covered by § 1225(b)(1). *See id.* at *18, *35. The court emphasized that § 1225(b)(2) applies only to aliens who are both "applicants for admission" and "seeking admission," and it rejected the government's argument that these terms are synonymous. *Id.* at *35. The court also rejected the contention that "seeking admission" applies only to arriving aliens at the border. *Id.* Instead, the court interpreted "seeking admission" as an active process that can occur inside the United States when an alien who has not been admitted seeks lawful status—"an alien must request admission into the United States." *Id. Singh* thus treated the asylum application—not mere unlawful presence—as the operative request for lawful admission.

Applying that interpretation, the court concluded that Singh was "seeking admission" because he filed an asylum application after entering the United States unlawfully. *Id.* After entering unlawfully on September 15, 2023—but before his second and operative detention on September 4, 2025—Singh submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* at *36. The court further observed that Singh's pending asylum proceedings demonstrated that he had been found to have a credible fear of persecution, which placed him squarely within the detention framework of § 1225(b). *Id.* The court relied on 8 C.F.R. § 235.3(c)(2), which provides that asylum applicants who have been found

6

to have credible fear "shall be detained" under § 1225(b). *Id.* at *36. The court thus concluded that Singh's asylum application did not shift him into § 1226(a) detention, but instead reinforced the conclusion that § 1225(b)(2) governed his custody. *Id.*

The court also noted that immigration officers determined Singh was not "clearly and beyond a doubt . . . entitled to be admitted," a statutory requirement for detention under § 1225(b)(2). *Id.* at *35 (citing 8 U.S.C. § 1225(b)(2)). The court further explained that Singh admitted to unlawful entry, had a pending removal case, and sought relief from removal; thus, the court concluded that he could not possibly meet the "clearly and beyond a doubt" standard. *Id.* Ultimately, the court held that Singh was properly detained under § 1225(b)(2), not § 1226(a). *Id.* Because § 1225(b)(2) mandates detention without the possibility of a bond hearing, the court denied Singh's request for release or a bond hearing. *Id.* at *33.

Petitioner in this case, as in *Singh*, entered the United States without inspection and was never admitted or paroled. (*See* Docs. 2 ¶ 21; 18 at 1; 18-1 at 2; 18-3 at 1.) He is therefore an "applicant for admission" under § 1225(a)(1). *See Singh*, 2026 WL 146005, at *14 (discussing 8 U.S.C. § 1225(a)(1)).

Further, the record establishes that § 1225(b)(1) does not apply here. Petitioner entered the United States in 2008 and never left. (*See* Doc. 2. ¶¶ 21–22.) He is currently detained based on his November 20, 2025 arrest in Staten Island, New York. (*Id.* ¶ 1; *see also* 18 at 1; 18-1.) By that time, he had been present in the United States for more than 16 years, placing him outside the two-year statutory window during which DHS may designate certain noncitizens for expedited removal under § 1225(b)(1)(A)(iii). *See* 8 U.S.C. § 1225(b)(1)(A)(iii). Moreover, DHS charged him under § 1182(a)(6)(A)(i) rather than under § 1182(a)(6)(C) or § 1182(a)(7), the only

inadmissibility grounds that trigger § 1225(b)(1). (*See* Docs. 18 at 1; 18-1, 18-3 at 1.) Thus, the statutory prerequisites for § 1225(b)(1) are not satisfied.

Unlike in *Singh*, because Petitioner has not taken any action that constitutes "seeking admission," § 1225(b)(2) does not apply. *Singh* did not hold that any request for immigration relief constitutes "seeking admission," instead, it tied that status to a present-tense request for lawful entry adjudicated through the inspection and admissibility framework. As *Singh* explains, "seeking admission" requires an affirmative request for lawful admission—"an alien must request admission into the United States." *Singh*, 2026 WL 146005, at *35. Unlike the petitioner in *Singh*, Petitioner here has made no such request. Petitioner has lived in the United States since 2008 and has not filed an asylum application, an adjustment application, a visa petition, or any other authorized mechanism for obtaining lawful admission.

Petitioner's only affirmative filing is a request to the NYPD for a U-visa law-enforcement certification, submitted after his DHS detainment. (*See* Doc. 2 at 6–18.) That certification is merely a prerequisite to filing a Form I-918 petition for U-nonimmigrant status; it does not constitute an application for admission, trigger inspection, or prompt an admissibility determination, and it is not submitted to DHS or U.S. Citizenship and Immigration Services (USCIS). *See* 8 C.F.R. § 214.14(c)(1)(i), (c)(2)(i).

Congress created the U-visa in 2000 as a humanitarian nonimmigrant classification for victims of certain serious crimes who have been, are being, or are likely to be helpful to law enforcement. *See Ramires v. Wolf*, No. 1:20-cv-0203 KWR/SMV, 2020 WL 6146393, at *1 (D.N.M. Oct. 20, 2020) (citing 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14). "The U-visa provides legal status to petitioners and qualifying family members to apply for work authorization and remain in the United States." *Id.* (citing 8 U.S.C. § 1101(a)(15)(U)). "The qualification

8

requirements are set forth by statute." *Id.* (citing 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV)). A law-enforcement certification—such as the one Petitioner requested from the NYPD—is a required component of a U-visa petition, but it is not an application that can trigger a change in immigration status. *See* 8 C.F.R. § 214.14(c)(2)(i).

Moreover, the Supreme Court has drawn a sharp distinction between "admission" and the assignment of a humanitarian nonimmigrant status—rejecting the notion that such statuses constitute, imply, or require lawful admission. In *Sanchez v. Mayorkas*, the Court considered Temporary Protected Status (TPS), a humanitarian nonimmigrant classification that, like "U-status," may be granted to noncitizens already present in the United States and that provides lawful presence and work authorization without requiring a lawful entry. *See* 593 U.S. 409, 411–12 (2021). The Court noted that "an 'admission' is defined as 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.'" *Id.* at 411 (quoting 8 U.S.C. § 1101(a)(13)(A)). The question in *Sanchez* was whether TPS could satisfy the "admission" requirement for adjustment of status under 8 U.S.C. § 1255—a provision governing who may become a lawful permanent resident. Although § 1255 is not at issue here, the Court's reasoning is directly relevant, because it addressed the precise relationship between nonimmigrant status and admission. The Court held that TPS does not cure an unlawful entry or satisfy any statutory admission requirement, emphasizing that "lawful status and admission . . . are distinct concepts in immigration law . . . ." *Id.* at 415 (citation omitted). To illustrate that distinction, the Court identified U-visa recipients as a typical example of noncitizens who may receive lawful "nonimmigrant status even if they entered the country unlawfully—so even if they were not admitted." *Id.* at 417 (citing 8 U.S.C. §§ 1101(a)(15)(U), 1182(d)(14)). Congress itself recognizes this separation in § 1255(m), which makes U-visa holders eligible for adjustment only if they were

9

"admitted . . . or otherwise provided nonimmigrant status"—a formulation that presumes the two are not the same. *See id.* (emphasis omitted). The Supreme Court's explicit acknowledgment that U-status may be granted without admission confirms that the U-visa process—whether seeking certification or filing a petition—does not constitute an application for admission, does not confer admission, and cannot be treated as "seeking admission" under § 1225(b)(2). If U-status can be granted without admission, then seeking U-status cannot constitute "seeking admission" under § 1225(b)(2).

Because neither § 1225(b)(1) nor § 1225(b)(2) applies, detention defaults to § 1226(a). This is the statutory structure *Singh* adopts: § 1226(a) governs detention of noncitizens who are not subject to either § 1225(b)(1) or § 1225(b)(2). *Singh*, 2026 WL 146005, at *33–36; *see also Jennings*, 583 U.S. at 287–89 (explaining that §§ 1225(b) and 1226 create separate detention tracks and that § 1226(a) governs when § 1225(b) does not apply).

Under the framework articulated in *Singh*, Petitioner's detention is governed by § 1226(a), not § 1225(b)(2). Because Petitioner has never received the bond hearing that § 1226(a) requires, he is entitled to such a hearing, and habeas relief is warranted to compel one.

Similarly, in *Cortez-Gonzalez v. Noem*, where a noncitizen had lived in the United States for nearly her entire life with no criminal history and was later arrested in the interior and charged under § 1182(a)(6)(A)(i), the court rejected DHS's attempt to classify her detention under § 1225(b)(2)(A). *See Cortez-Gonzalez v. Noem*, --- F. Supp. 3d ---, No. 2:25-cv-0985 MLG/KK, 2025 WL 3485771, at *3–5 (D.N.M. Dec. 4, 2025). The court explained that § 1225(b)(2) applies only when a noncitizen is both an "applicant for admission" and "seeking admission," and that long-term residents who have taken no affirmative steps to request lawful admission are not "seeking admission" within the meaning of the statute. *Id.* at *4–5. Because the statutory

prerequisites for § 1225(b)(2) were not met, the court held that detention defaulted to § 1226(a). *Id.* at *5. The same reasoning applies here: Petitioner has lived in the United States for years, was charged under § 1182(a)(6)(A)(i), and has made no affirmative request for admission. As in *Cortez-Gonzalez*, DHS's reliance on § 1225(b)(2) is inconsistent with the statutory text, and § 1226(a) governs his detention.

**B.     Due Process Claim**

Because the undersigned concludes that § 1226(a) governs Petitioner's detention, the Court must also consider the due process that accompanies detention under that provision. Section 1226(a) itself contemplates individualized custody determinations, and Respondents acknowledge that if § 1226(a) applies, "the appropriate relief would be a bond review[.]"[3] (*See* Doc. 18-6 at 2.) This aligns with the consistent holdings of courts in this district: when a noncitizen is detained under § 1226(a), due process requires an individualized custody determination.

As a preliminary matter, the undersigned notes that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).

Courts in this district have repeatedly applied these principles to hold that noncitizens detained under § 1226(a) are entitled to an individualized bond hearing. In *Lopez-Romero v. Lyons*, the court held that because § 1226(a) governed the petitioner's detention, he was "entitled to an individualized bond hearing as a matter of right," and that continued detention without such review constituted "an ongoing violation of [his] right to due process." No. 2:25-cv-1113 MIS/JHR, 2026

---

[3] Respondents' acknowledgment appears in Exhibit F (Doc. 18-6) to their response. Respondents expressly "incorporate by reference all arguments raised in [their] response brief" in *Singh v. Noem*, which they attach as Exhibit F. (*See* Doc. 18 at 3.) The Court therefore understands Respondents' position on the § 1225/§ 1226 distinction to include the arguments set forth in Exhibit F.

11

WL 92873, at *6 (D.N.M. Jan. 13, 2026) (citing *Cortez-Gonzalez*, 2025 WL 3485771, at *5). Similarly, in *Gonzalez Ramos v. Dedos*, the court concluded that a noncitizen who had lived in the United States for decades was not "seeking admission" under § 1225(b)(2)(A), and therefore that § 1226(a) controlled; because of that, the petitioner was "entitled to an individualized bond hearing before an [Immigration Judge,]" at which the government bore the burden of justifying continued detention. No. 1:25-cv-0975 MLG/KRS, 2025 WL 3653928, at * 4–5 (D.N.M. Dec. 17, 2025) (citations omitted). And in *Munoz Teran v. Bondi*, the court again held that § 1226(a) governed the detention of a long-term resident arrested in the interior, and ordered a bond hearing because the petitioner had been detained "without an opportunity to post bond or request a conditional release . . . ." No. 2:25-cv-1218 KWR/SCY, 2026 WL 161527, at *1, 6 (D.N.M. Jan. 21, 2026).

These decisions reflect a uniform principle: when § 1226(a) applies, due process requires an individualized custody determination before the government may deprive a noncitizen of physical liberty. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (citing *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025)) ("[T]he due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ.").

Petitioner has never received such a determination. ICE arrested him in the interior of the United States and has detained him without any showing that he poses a danger or flight risk. The government's failure to make that threshold determination—and its continued detention of Petitioner without a bond hearing—creates precisely the "risk of erroneous deprivation" that due process forbids. *See Lopez-Romero*, 2026 WL 92873, at *6 (considering *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

12

Because § 1226 governs Petitioner's detention and he has never received an individualized custody determination, the appropriate remedy is a prompt bond hearing before a neutral Immigration Judge. Under "normal circumstances" the noncitizen typically bears the burden at a § 1226 hearing, but that allocation does not apply where the individual has been subjected to unlawful detention in violation of his constitutional rights. *See Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-1031 KG/JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (citing *Velasquez Salazar*, 2025 WL 2676729, at *6). Due process therefore requires the Government to bear the burden of proving, by clear and convincing evidence, that Petitioner is either a danger to the community or a flight risk. *Id.* If the Government cannot meet that burden, bond must be set at an amount Petitioner can reasonably afford.

**C.    Administrative Exhaustion**

Respondents also contend that Petitioner "must first exhaust his administrative remedies" by requesting a bond hearing before the immigration court. (*See* Docs. 18 at 2; 18-6 at 10–11.) That argument is misplaced for several reasons; exhaustion is not required here.

First, neither the INA nor § 2241 imposes a statutory exhaustion requirement for noncitizens challenging the legality of their detention—as opposed to a final order of removal. *See Castro v. Noem*, No. 1:25-cv-1129 KWR/LF, 2026 WL 280470, at *3 (D.N.M. Feb. 3, 2026) (citing *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004)). Although the Tenth Circuit applies an exhaustion requirement in § 2241 cases, it "recognize[s] a 'narrow exception'" where exhaustion would be futile. *Id.* (quoting *Garza v. Davis*, 596 F.3d 1198, 1203–04 (10th Cir. 2010)).

Second, exhaustion is futile here. Petitioner alleges—and Respondents do not dispute—that neither ICE nor EOIR has offered him any opportunity to seek bond. (*See* Doc. 2 ¶ 10.) Respondents themselves maintain, by reference to Exhibit F of their response, that immigration

13

judges categorically lack jurisdiction to provide § 1226(a) bond hearings to noncitizens DHS has classified under § 1225(b)(2)(A)—including Petitioner. (*See* Doc. 18-6 at 2, 10–11.) They rely on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which directs immigration judges to deny bond requests for noncitizens DHS classified under § 1225(b)(2)(A). (*Id.* at 2.) Under this agency's interpretation, any request by Petitioner for a bond hearing would have been automatically denied for lack of jurisdiction.

Courts in this district have repeatedly held that *Hurtado* renders exhaustion futile in precisely these circumstances. *See, e.g.*, *Pu Sacvin*, 2025 WL 3187432, at *2 (exhaustion futile where IJ lacked jurisdiction under *Hurtado*); *Castro*, 2026 WL 280470, at *3 (same); *Francisco v. Dedos*, No. 1:25-cv-1229 MIS/GJF, 2026 WL 145456, at *7–8 (D.N.M. Jan. 20, 2026), *R&R adopted*, *Francisco v. Dedos*, 2026 WL 300319 (D.N.M. Feb. 4, 2026) (same). As these courts have recognized, requiring a petitioner to pursue a remedy that the agency has already declared unavailable would serve no purpose and would only delay judicial review.

### D. Request to Stay Removal due to U-Visa

Petitioner also asks the Court to stay his removal in light of his pending U-visa certification request. (*See* Doc. 2 ¶ 3 & at 4.) However, a § 2241 habeas is not the proper vehicle to obtain such relief. As initially stated, the fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention—not to obtain review of, or a stay of, a removal order. *See Palma-Salazar*, 677 F.3d at 1035.

Congress has made it clear that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." *Calderon-Rodriguez v. Terry*, 547 F. App'x 867, 869 (10th Cir. 2013) (quoting 8 U.S.C. § 1252(a)(5)). As this Circuit has explained, "[a] petition under [§] 2241 of Title 28, or any other

14

habeas corpus provision is not the proper vehicle to challenge an alien's removal." *Id.* (quotation and quotation marks omitted). Although habeas remains available to challenge the fact or duration of immigration detention, it does not confer jurisdiction to stay or review removal itself. *See id.* (citing *Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008)).

Because § 1252(a)(5) channels all challenges to removal to the courts of appeals, this Court lacks jurisdiction to stay Petitioner's removal in this § 2241 proceeding. Accordingly, the undersigned recommends that Petitioner's request for a stay of removal be denied.

## IV. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The Amended Petition and Complaint for Declaratory, Injunctive, and Habeas Relief (Doc. 2) should be **GRANTED IN PART** on the grounds that Respondents violated the INA and Petitioner's procedural due-process rights under the Fifth Amendment.

2. The Amended Petition and Complaint for Declaratory, Injunctive, and Habeas Relief (Doc. 2) should be **DENIED IN PART** to the extent Petitioner seeks a stay of removal, as the Court lacks jurisdiction to grant such relief.

3. The Court should declare that Petitioner's detention for over 90 days without a bond hearing violates the INA and his procedural due process rights under the Due Process Clause of the Fifth Amendment.

4. The Court should **ORDER** Respondents to provide Petitioner with an individualized bond hearing before a neutral Immigration Judge within seven days of the Court's order and a status report to the Court within ten days of the Court's order. At the bond hearing, the Government must bear the burden of proving, by

clear and convincing evidence, that Petitioner is either a danger to the community or a flight risk. If the Government fails to meet its burden, bond must be set at an amount Petitioner can reasonably afford.

5. If no bond hearing is held within seven days, the Court should **ORDER** Petitioner's immediate release unless and until the Government demonstrates that continued detention is warranted under § 1226(a).

6. The Court should retain jurisdiction over this matter to decide any future motion for an award of reasonable attorney's fees and costs under the EAJA.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE